CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 25, 2024
LAURA A. AUSTIN, CLERK
BY:
/s/T. Taylor
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LARRY YOUNG, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:23cv00206 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| FRANK DYER, *et al.*, | ) | By: Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

Larry Young, Jr., a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against staff at the Central Virginia Regional Jail ("CVRJ"). Young alleges that the defendants failed to protect him and denied him equal protection.[1] The defendants have moved to dismiss the complaint. The court has reviewed the pleadings and will grant the defendants' motion in part and deny it in part.

---

[1] In response to the defendants' motion to dismiss, Young filed a "Synopsis of Complaint." (ECF No. 26.) In the submission, Young adds a retaliation claim against the defendants and provides additional facts in support of his failure-to-protect claim. He also recounts details of other events that happened on different days with people other than the defendants. Many of those incidents are the subject of one of Young's several other lawsuits in this court. *See Young v. Dyer*, Civil Action No. 7:23cv171 (W.D. Va.), *Young v. Sparks, et al.*, Civil Action No. 7:23cv180 (W.D. Va.), *Young v. Waddy, et al.*, Civil Action No. 7:23cv184 (W.D. Va.), *Young v. Nicholson*, Civil Action No. 7:23cv258 (W.D. Va.), *Young v. Unknown Male, et al.*, Civil Action No. 7:23cv259 (W.D. Va.), *Young v. Madison, et al.*, Civil Action No. 7:23cv260 (W.D. Va.), *Young v. Madison, et al.*, Civil Action No. 7:23cv261 (W.D. Va.), *Young v. Dyer, et al.*, Civil Action No. 7:23cv262 (W.D. Va.), *Young v. Madison, et al.*, Civil Action No. 7:23cv263 (W.D. Va.), and *Young v. Stuart, et al.*, Civil Action No. 7:23cv586 (W.D. Va.). Upon consideration of the filing, the court will construe Young's response (ECF No. 26) as a motion to supplement his complaint and grant the motion in part, only to the extent he adds a new retaliation claim against the current defendants and adds facts in support of his claims currently before the court in this action. The motion to supplement will be denied in all other respects. The court notes that it appears that Young provides the additional details about incidents not directly related to the current claims against the current defendants as a way to provide the court with an overview of his experiences while incarcerated and that he is not intending to raise new claims against new defendants in this action.

# I.

Young alleges that he is a former correctional and security officer and was employed at various facilities, including the CVRJ. Young claims that, prior to his current incarceration, he witnessed other correctional officers at CVRJ assault an inmate and reported the incident to authorities.

At the time he filed this action, Young was incarcerated at the CVRJ. Because of his prior employment, Young alleges that he was housed in protective custody and was not around other inmates. Young also contends that he previously worked with the defendants; that the defendants knew he had been employed there; and that they all knew why he was housed in protective custody.

Young asserts that, "despite this knowledge," defendants Officers O'Donnell and Horrocks placed him in a transportation van with six other CVRJ inmates to be transported to the Orange County courthouse.[2] (Compl. at 7 [ECF No. 1].) During the transport, Young states that the other inmates immediately recognized him and threatened to "fuck [him] up." (Compl. at 8.)

Upon arriving at the courthouse, Officers O'Donnell and Horrocks transferred Young to the custody of the Orange County Sheriff's Office, but "did not notify the Orange County Sheriff's Deputy of [Young's] needs to be in protective custody." (*Id.*) After entering the courthouse, Young states that he was placed in a room, fully restrained, with seven other CVRJ

---

[2] It appears that Officers O'Donnell and Horrocks also rode in the van for the transport because both defendants were also at the courthouse to later transfer Young to the custody of the Sheriff's Office.

inmates.[3] The inmates threatened Young and told him that he would have to pay them to protect him or they would "fuck [him] up for being a cop." (Compl. at 9.)

After Young's hearing, Young was placed in a holding cell, fully restrained, with an inmate who was unrestrained. The inmate had been in the transport van from the CVRJ to the courthouse with Young earlier that day. Young states that the other inmate was "aware of [Young's] prior employment and [his] criminal allegations." (Compl. at 9.) Young alleges that the inmate proceeded to "sexually assault [him] in the holding cell."[4] (*Id.*)

After the alleged sexual assault, Young claims that Officers O'Donnell and Horrocks placed the assaulting inmate and "his wife, who was also an inmate at court that day," together in a van with Young, to return to the CVRJ. (*Id.*) Young asserts that he "assum[es] this was a reward for [the inmate] sexually assaulting [Young]" because Officers O'Donnell and Horrocks "allowed" the inmate and "his wife" to "sit together, make out with one another, and have the female grope the man's penis, in the van ride back to the CVRJ." (*Id.*)

Young alleges that after arriving back at the CVRJ, he repeatedly "attempted to report" the sexual assault, but he was "ignored" by "all" employees and "no one would answer [his] request forms, no one would give [him] a grievance, and no one would orally receive [his] report." (Compl. at 10.) On February 1, 2023, Young states that he was "finally" transported to the University of Virginia's Medical Center "to receive treatment for [his] sexual[] assault," which had occurred "2 days, 5 hours, and 30 minutes" prior. (Compl. at 11.)

---

[3] It is not clear whether the other inmates were restrained. (*See* Compl. at 8−9.)

[4] The court notes that the events that transpired while Young was in the custody of the Orange County Sheriff's Office are the subject of a separate civil action. *See Young v. Sparks, et al.*, Civil Action No. 7:23cv586 (W.D.Va.).

Young argues that the defendants failed to protect him and denied him equal protection "because of who [he is] and the allegations made against [him]." (*Id.*) Young seeks $2 million in damages and transfer to "a different jail." (Compl. a 13.) The court notes that, since filing this action, Young was transferred to the Albemarle Charlottesville Regional Jail in June 2023 and currently remains housed there. (ECF No. 15.)

The defendants filed a motion to dismiss. (ECF No. 23) In support of their motion, defendants argue that Young's complaint fails to state a failure-to-protect claim because he did not allege (1) "that he sustained any injury as a result of the alleged sexual assault, let alone a 'significant injury,'" or (2) that the defendants had a sufficiently culpable state of mind because (a) the alleged assault did not occur at the jail or while Young was in the defendants' custody, (b) Young did not allege facts to establish that any of the defendants were aware of a specific risk that Young would be sexually assaulted, and (c) the defendants were at most negligent in allegedly failing to notify the Sheriff's Office about Young's need to be placed in protective custody.  (ECF No. 24 at 6−11.)

The defendants also argue that Young's allegations are too conclusory to state a viable equal protection claim as he "does not allege facts to show that he was treated differently from any other 'similarly situated' inmate." (ECF No. 24 at 16−17.) Finally, the defendants construe Young's complaint as alleging claims that his medical treatment was delayed, he was denied access to grievances, his rights under the Prison Rape Elimination Act ("PREA") were violated, and he was denied due process. Defendants argue that Young fails to allege any of the defendants were involved in delaying any medical treatment, denying him due process,

denying him access to grievances, or violating his rights under PREA, and that Young has no right to access the grievance process and there is no cause of action under PREA.

In response to the defendants' motion, Young filed a "Synopsis of Complaint" which the court construed as a motion to supplement and granted in part as was relevant and related to the claims and defendants in this action. (*See supra* n.1.) Through his "Synopsis of Complaint," Young adds a claim that defendants Dyer, Huffman, Rollins, Horrocks, and O'Donnell "intentionally and maliciously" placed him with other CVRJ inmates despite knowing he was in protective custody as retaliation for him reporting the alleged inmate assault while was working as a correctional officer with them. (ECF No. 26 at 1.) He also provides additional facts in support of his failure-to-protect claim, including allegations concerning injuries he sustained during the alleged sexual assault. For example, Young states that the assaulting inmate "slammed [Young] against the [concrete] wall in the cell, causing [him] to strike [his] head and the lower part of [his] back," which "scraped" his head and made it red. (*Id.* at 34, 45.) He also alleges that when the assaulting inmate "shov[ed]" Young to his knees to "force" him to engage in oral sex, Young's knees became "scraped and red." (*Id.* at 39, 45.) He states that the nurse who treated him after the assault was "concerned that sexually transmitted diseases could have entered [his] blood stream" through wounds he had prior to the sexual assault and that, "[b]ecause of these concerns," he was injected with one medication and prescribed two others to help prevent any infection. (*Id.*) Young also alleges that, as a result of the sexual assault, he suffers "post-traumatic stress," anxiety, panic attacks, depression, nightmares, and low self-esteem. (*Id.* at 50.)

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Id.*; *see Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "liberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *see also Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. Feb. 8, 2021) (quoting *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

## III.

Defendants argue that Young's allegations fail to state a viable failure-to-protect claim against Officers Horrocks and O'Donnell. The court disagrees and, therefore, will deny their motion to dismiss as to this claim.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition "imposes duties on [prison] officials, who must provide humane conditions of confinement [and] 'take reasonable measures to guarantee the safety of the [prison's] inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526−27 (1984)). "In particular, . . . prison officials have a duty . . . . to protect prisoners from violence at the hands of other prisoners." *Id.* (internal quotation marks and citation omitted).

To state a failure-to-protect claim under the Eighth Amendment, an inmate must allege facts sufficient to satisfy two elements. First, the inmate must establish that he suffered "a

serious deprivation of his rights in the form of a 'serious or significant physical or emotional injury.'" *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014) (quoting *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010)). Second, the inmate must show that the prison official had a "sufficiently culpable state of mind," which, in this context, means that the official acted with "deliberate indifference to inmate health or safety." *Id.* at 346−47 (quoting *Farmer*, 511 U.S. at 834). Deliberate indifference is "a very high standard" that cannot be met by a showing of "mere negligence." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). "A plaintiff establishes 'deliberate indifference' by showing that the prison official 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Danser*, 772 F.3d at 346 (quoting *Farmer*, 511 U.S. at 837).

Young alleges that Officers O'Donnell and Horrocks previously worked with him at CVRJ; that they knew he was a former correctional officer; that they knew he had reported an excessive force incident committed by his coworkers that they knew the nature of his criminal charges (which included sex crimes against minors); and that they knew that was why he was assigned to protective custody housing as an inmate. Despite this knowledge, Young asserts that these defendants placed him in a transport van with other CVRJ inmates and presumably witnessed the other inmates threatening to "fuck [Young] up" during the ride to the courthouse. And then, upon arrival at the courthouse, the defendants transferred Young to the custody of the Sheriff's Office without advising the Sheriff's Deputy that Young needed to be placed in protective custody.

While Young was at the courthouse, he was allegedly sexually assaulted by another inmate with whom he was left alone and restrained while the other inmate was unrestrained.

As a result of the sexual assault, Young alleges that he suffered multiple physical and mental injuries.

After the alleged sexual assault, Young asserts that Officers O'Donnell and Horrocks placed him back in the transport van with the assaulting inmate and his "wife" and allowed the assaulting inmate and his "wife" to sit together, kiss, and grope genitals as a "reward" for the inmate assaulting Young. Accepting Young's allegations as true and drawing all reasonable inferences in his favor—as the court must do at this stage of the proceedings—the court concludes that Young has alleged a colorable failure-to-protect claim against Officers O'Donnell and Horrocks.

## IV.

Defendants argue that Young's allegations fail to state a viable equal protection claim against the defendants. The court agrees and, therefore, will grant their motion to dismiss as to this claim.

The Equal Protection Clause of the Fourteenth Amendment generally requires the government to treat similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439-41 (1985). To state a viable equal protection claim, an inmate "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination" on the basis of the plaintiff's membership in a protected class, such as race, gender, or religion. *Id.* (internal quotation marks omitted). The plaintiff must next show that the policy is not reasonably related to legitimate penological interests. *Id.* at 732. Once this showing is made, the burden shifts to a defendant to show the disparity is not an exaggerated response to a

particular concern. *Morrison v. Garraghty*, 239 F.3d 648, 654-55 (4th Cir. 2001). Here, Young does not allege any facts to demonstrate that he has been treated differently from others with whom he is similarly situated. *See id.* at 654 (noting that, "to succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated"); *Willis v. Town of Marshall, N.C.*, 426 F.3d 251, 263 (4th Cir. 2005) ("[T]he Supreme Court has recognized the validity of "class of one" Equal Protection claims, 'where the plaintiff alleges she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" (quoting *Town of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000))). As such, his allegations fail to state a cognizable equal protection claim.

## V.

Although not specifically identified by Young, the defendants construe Young's complaint as alleging claims concerning delayed medical treatment, denial of access to grievances, violation of Young's rights under PREA, and denial of due process. The court agrees that Young's allegations fail to state a cognizable § 1983 claim on any of these grounds and, insofar as they are alleged in Young's complaint, will grant the defendants' motion to dismiss these claims.

To state a cause of action under § 1983, a plaintiff must allege facts indicating that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1988). Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001)

(internal citation omitted). Thus, a § 1983 claim requires factual detail about each defendant's personal involvement. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)) (explaining that liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally" in the violation of plaintiff's rights and affirming dismissal of claim where plaintiff did not allege personal involvement by defendant). When a plaintiff uses a collective term such as "defendants" to identify purported wrongdoers, his complaint is facially deficient. *See, e.g., Breyan v. Mental Health*, No. 2:17cv665-BHH-MGB, 2017 U.S. Dist. LEXIS 58906, at *6, 2017 WL 1380647 at *2 (D.S.C. Mar. 24, 2017) (summarily dismissing claims against "mental health" or "medical staff" and holding that the plaintiff "must identify the person or persons who purportedly violated his rights."); *Roberson v. Thomas*, No. 2:11-3114-CMC-BHH, 2012 U.S. Dist. LEXIS 31667, at *5−6, 2012 WL 786275, at *2 (D.S.C. Feb. 16, 2012) (dismissing claims against a collection of "defendants"). A "[p]laintiff's general allegation that unspecified defendants and/or an entire 'department' violated his rights is conclusory and does not adequately state a § 1983 claim." *Breyan*, 2017 U.S. Dist. LEXIS 58906, at *6, 2017 WL 1380647, at *2.

Here, Young alleges that upon his return to the CVRJ, he attempted to report the alleged sexual assault, but he was ignored by "all" CVRJ employees and that "no one" would answer his request forms, give him a grievance, or accept his oral reports of the incident. (Compl. at 10). He does not identify by name any particular person, let alone any defendant,

to whom he claims to have tried to report the sexual assault,[5] or obtain a grievance form,[6] and he does not allege that any of the defendants acted personally to intentionally delay him from receiving any medical treatment[7]. Moreover, there are no allegations in Young's complaint that support a viable due process claim against any of the named defendants.

Based on the forgoing, the court will grant the defendants' motion to dismiss as to any delayed medical treatment, access to grievances, violation of PREA, and due process claims Young may be attempting to make in his complaint against the current defendants.

---

[5] Further, numerous courts have found no basis in law for a private cause of action under § 1983 to enforce an alleged PREA violation. *See, e.g., Whitten v. Fleming*, No. 7:17cv262, 2017 U.S. Dist. LEXIS 137511, *3 (W.D. Va. Aug. 28, 2017), *Snodgrass v. Messer*, No. 7:16cv50, 2017 U.S. Dist. LEXIS 34329, at *14−15 (W.D. Va. Mar. 10, 2017); *Chapman v. Willis*, No. 7:12cv389, 2013 U.S. Dist. LEXIS 74694, at *12−14, 2013 WL 2322947, at *4 (W.D. Va. May 28, 2013); *Berry v. Eagleton*, No. 13-2379, 2014 U.S. Dist. LEXIS 121552, at *21−22, 2014 WL 4273314, at * 10 (D.S.C. Aug. 29, 2014) (citing other cases).

[6] Moreover, inmates have no constitutional right to a grievance procedure, and thus, officials' actions that interfere with an inmate's ability to utilize such a procedure do not state any denial of constitutional rights. *See Coward v. Clarke*, No. 7:20cv702, 2022 U.S. Dist. LEXIS 58433, at *8, 2022 WL 971987, at *3 (W.D. Va. Mar. 30, 2022) ("Accusations of improper denials of access to grievances or appeals, or of improper grievance responses . . . do not give rise to any constitutional claim actionable under § 1983."); *see also Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017) ("[I]nmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process."); *Guinn v. Crumpler*, No. 7:18cv274, 2020 U.S. Dist. LEXIS 59139, at *14, 2020 WL 1666301, at *6 (W.D. Va. Apr. 3, 2020) (citing cases finding no right to grievance procedure access and denying liability for unsatisfactory grievance responses).

[7] To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to demonstrate that an official was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). Intentional delay of, or interference with, medical treatment can amount to deliberate indifference, *see Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006), but the Fourth Circuit has held that there is "no Eighth Amendment violation unless 'the delay results in some substantial harm to the patient,' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" *Formica*, 739 F. App'x at 755 (citing *Webb v. Hamidullah*, 281 F. App'x 159, 166-67 (4th Cir. 2008)); *see also Shame v. S.C. Dep't of Corr.*, 621 F. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." (internal quotation marks omitted)). Young has not alleged facts from which the court could determine that any of the defendants intentionally delayed or interfered with him receiving medical treatment after the alleged sexual assault.

## VI.

For the reasons stated, the court will deny the defendants' motion as to the failure-to-protect claims against defendants O'Donnell and Horrocks and grant the defendants' motion as to all other claims. The court notes that defendants' motion does not address Young's newly added retaliation claim against all of the current defendants. Under Standing Order 2023-17, the court will give the defendants the opportunity to file any motion for summary judgment as to Young's failure to protect and retaliation claims.

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 25th day of March, 2024.


*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE