CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
March 31, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LARRY ALLEN YOUNG, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:23-cv-00206 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| FRANK DYER *et al.*, | ) | By:  Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

Plaintiff Larry Allen Young, Jr., proceeding *pro se*, filed a civil-rights action asserting claims under 42 U.S.C. § 1983 against various law enforcement officials employed by the City of Orange, Virginia. (*See* Compl. [ECF No. 1].) Now before the court is Defendants' motion for summary judgment on the remaining claims against them. (Defs.' Mot. for Summ. J. [ECF No. 37].) For the following reasons, the court will grant Defendants' motion and dismiss Plaintiff's remaining claims.

I.

This action is one of many Plaintiff has filed regarding events occurring during his pretrial confinement on various criminal charges in Madison County and Orange County.

A. Plaintiff's Allegations

Before his arrest, Plaintiff worked various jobs as a security and corrections officer, including for the Virginia Department of Corrections and at the Central Virginia Regional Jail ("CVRJ"). (Compl. at 6.) Following his arrest, he was housed at CVRJ and was placed in protective custody based on his prior employment. (*Id.*) However, the details of his arrest and

incarceration were made public, and his likeness and information about his employment history were made available on television and online. (*Id.* at 6–7.)

Plaintiff alleges that, on January 30, 2023, around 9:00 a.m., he was removed from his cell at CVRJ by Defendants Horrocks and O'Donnell, both transportation officers with CVRJ. (*Id.* at 5–7.) Horrocks and O'Donnell fully restrained him using handcuffs, a waist chain, a blackbox, and leg irons and locked him in the back of an open transportation van with six male inmates to transport him to the Orange County courthouse. (*Id.* at 7–8.) Two of the inmates in the van recognized Plaintiff, asked him where he was being housed within the jail, and threatened to "fuck [him] up." (*Id.*)

When they arrived at the courthouse, Plaintiff was remanded to the custody of the Orange County Sheriff's Office. (*Id.* at 8.) Horrocks and O'Donnell did not inform the Orange County Sheriff's deputy of the need to place Plaintiff in protective custody. (*Id.*) One of the sheriff's deputies at the courthouse, Lieutenant Joshua Sparks, had also formerly worked at CVRJ. (*Id.*) Sparks locked Plaintiff in a room, still fully restrained, with seven other CVRJ inmates. (*Id.*) The inmates told Plaintiff he needed "to pay them for protection" or "they would fuck [him] up for being a cop." (*Id.* at 9.)

After his hearing, Sparks put Plaintiff, who was still restrained, in a holding cell with an unrestrained inmate who had been in the transport van with Plaintiff earlier that day. (*Id.*) Plaintiff alleges that this inmate, aware of Plaintiff's employment history and the basis for his criminal charges, sexually assaulted Plaintiff in the holding cell. (*Id.*)

Following the assault, Horrocks and O'Donnell placed Plaintiff in a van to be transported back to CVRJ. (*Id.*) The inmate who had assaulted him and that inmate's wife,

another inmate, were placed in the van with him. (*Id.*) The assailant and his wife were permitted to sit together, and they kissed and groped each other during the drive back to the jail. (*Id.*)

Once back at CVRJ, Plaintiff repeatedly tried to report the assault but "was ignored by all [CVRJ] employees," and his requests for a grievance form went unanswered. (*Id.* at 10.) But two days later, he was transported to the University of Virginia Medical Center to "receive treatment" for the assault. (*Id.* at 10–11.)

### B. Procedural History

On March 29, 2023, Plaintiff filed this action against Defendants Dyer, O'Donnell, Horrocks, Huffman, and Rollins in the U.S. District Court for the Eastern District of Virginia, asserting claims for Defendants' failure to protect him and for denying him equal protection and due process of law. (*See* Compl. at 1–13.) Because the events giving rise to Plaintiff's claims occurred in this district, rather than the Eastern District of Virginia, the case was transferred to this court on April 12, 2023. (*See* Mem. Or. [ECF No. 3].)

On August 3, 2023, Defendants jointly moved to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). (*See* Defs.' Mot. to Dismiss [ECF No. 23].) In connection with his response to that motion, Plaintiff filed a "Synopsis of Complaint," which raised an additional claim against all Defendants, claiming the conduct alleged in his complaint was unconstitutional retaliation based on Plaintiff's "reporting corruption, filing FOIA requests, and requesting internal affairs investigations against the Central Virginia Regional Jail and the Central Virginia Regional Jail Authority Board." (*See* Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss at 1–2 [ECF No. 26].) Based on other allegations, it appears Plaintiff's

retaliation claim may stem from reports he claims to have made about an assault of a black inmate by a CVRJ officer during his employment at CVRJ. (*See* Compl. at 11.)

The court construed Plaintiff's filing as a motion to supplement his complaint, which it granted to the extent Plaintiff sought to add a retaliation claim against Defendants and supplement the factual allegations supporting his preexisting claims. (*See* Mem. Op., Mar. 25, 2024, at 1 n.1 [ECF No. 31].) The court then granted Defendants' motion to dismiss with respect to Plaintiff's equal-protection claims, as well as any claims Plaintiff sought to advance for the denial of due process, delayed medical treatment, denial of access, and violation of his rights under the Prisoner Rape Elimination Act. (*See id.* at 13; Order, Mar. 25, 2024, at 1 [ECF No. 32].) The court also granted Defendants' motion as to his failure-to-protect claims against Dyer, Huffman, and Rollins. (*See* Order, Mar. 25, 2024, at 1.) But the court denied Defendants' motion to dismiss as to the failure-to-protect claims against O'Donnell and Horrocks and the retaliation claims against all Defendants. (*Id.*)

Defendants now seek summary judgment on these remaining claims. (*See* Defs.' Mot. for Summ. J. at 1 [ECF No. 37].) Defendants filed this joint motion on July 29, 2024. The next day, the court sent Plaintiff a standard notice, required by *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that advised him that the court would give him 21 days "from the date of this Notice to submit any further counter-affidavits or other relevant evidence contradicting, explaining, or avoiding Defendant's evidence." (Not. at 1 [ECF No. 39].) Plaintiff filed a response in opposition on August 12, 2024, but did not include any additional evidence or sworn statements. (*See* Pl.'s Resp. in Opp. to Defs.' Mot. for Summ. J. [ECF No. 40].) That same day, Defendants filed the evidence and declarations in support of their joint motion for

- 4 -

summary judgment. (*See* ECF Nos. 41–46.) Plaintiff did not file any further response after receipt of Defendants' evidence.

### C. Defendants' Evidence

Defendants' evidence shows that Plaintiff was employed as a jail officer at CVRJ for approximately three weeks in late 2021 before being terminated for repeated failures to report for his scheduled shifts. (*See* Decl. of F. Dyer ¶¶ 9–13 [ECF No. 41]; Decl. of B. Huffman ¶¶ 9–13 [ECF No. 42]; *see also* Exs. A–D. to Dyer Decl. [ECF Nos. 41-1, 41-2, 41-3, 41-4].)

Plaintiff was transported to CVRJ on January 27, 2023, by an Orange County Sheriff's Deputy. (Dyer Decl. ¶ 15.) He was being held on 38 charges, including charges of kidnapping, murder, rape, and sexual assault of a minor. (*Id.* ¶ 16; Ex. F to Dyer Decl. at 4 [ECF No. 41-6].) At 3:30 p.m., he was received and booked at CVRJ. (Dyer Decl. ¶ 15; Ex. E to Dyer Decl. [ECF No. 41-5].) At the time of booking, Plaintiff did not report any known enemies at CVRJ. (Dyer Decl. ¶ 15.) Plaintiff was housed alone in a holding cell until his housing classification process was completed the morning of January 30, 2023. (*Id.* ¶¶ 17–18.) Based in large part on the number and severity of his charges, it was determined that Plaintiff should be housed in a segregated cell, alone, in a maximum-security area of the jail. (*Id.* ¶ 18; Ex. G to Dyer Decl. [ECF No. 41-7].)

On January 30, 2023, Defendant O'Donnell and Officer B. Thomas[1] were assigned to transport inmates to and from the Orange County Courthouse. (Decl. of J. O'Donnell ¶ 8

---

[1] Although Plaintiff alleges that Defendant Horrocks, not Officer Thomas, was responsible for transporting inmates to the Orange County Courthouse on January 30, 2023, Defendants' evidence shows that Horrocks was assigned to airlift that day and did not participate in the transportation of Plaintiff. (Dyer Decl. ¶ 20; O'Donnell Decl. ¶ 6; Decl. of M. Horrocks ¶ 6 [ECF No. 44].)

[ECF No. 43]; Dyer Decl. ¶ 19; Ex. H. to Dyer Decl. [ECF No. 41-8].) O'Donnell and Thomas transported seven male inmates, including Plaintiff, and one female inmate to the Orange County Courthouse via four separate trips between 8:25 a.m. and 9:25 a.m.[2] (O'Donnell Decl. ¶¶ 9, 10; Dyer Decl. ¶¶ 21, 23; Ex. I to Dyer Decl. [ECF No. 41-9].) Plaintiff was transported during one of those along with two other inmates—Joseph Galbreath and John Roach. (O'Donnell Decl. ¶ 11.) At the time of Plaintiff's transport to the courthouse, O'Donnell was unaware of any special housing or classification status for Plaintiff or that he had any known enemies at CVRJ. (*Id.*) Plaintiff and Roach were transported in full restraints and Galbreath was transported in only handcuffs based on mobility issues requiring him to walk with a cane. (*Id.* ¶ 12.) During the trip to the courthouse, O'Donnell did not hear Roach or Galbreath threaten Plaintiff, and Plaintiff did not report any threats to O'Donnell after arriving. (*Id.* ¶¶ 12, 15.)

Upon arriving at the courthouse, O'Donnell and Thomas relinquished custody of Plaintiff to deputies of the Orange County Sheriff's Office. (*Id.* ¶ 13.) Because O'Donnell was unaware that Plaintiff required any special housing or custody status, he did not instruct the deputies that Plaintiff needed to be kept separate from other inmates. (*Id.* (O'Donnell averring that he "had no such information to provide, [he] was not under any orders to provide any such instructions, and [he] was not aware of any reason or need to make any such suggestions").)

---

[2] The courthouse is located roughly 1.5 miles from CVRJ, and the drive from the jail to the courthouse takes approximately five minutes. (Dyer Decl. ¶ 22.)

Later that day, O'Donnell and Officer F. Lanzon transported the eight inmates back to CVRJ in two separate trips between 2:25 p.m. and 2:45 p.m. (*Id.* ¶ 16; Dyer Decl. ¶ 24.) All inmates were fully restrained during transport except Galbreath who was, again, only in handcuffs. (O'Donnell Decl. ¶ 16.) After returning to CVRJ, Plaintiff was escorted to his cell in the booking area and his restraints were removed. (*Id.* ¶ 17.) At no point while he was being escorted to his cell did Plaintiff report that he had been sexually assaulted by another inmate while at the courthouse. (*Id.*) There is also no indication that Plaintiff reported the alleged assault while in his holding cell after returning. (Dyer Decl. ¶ 25.)

Around 8:45 p.m. the next day, Plaintiff asked Nurse Deidre Lowe to help him report an incident under PREA. (*Id.* ¶ 26.) Lowe informed Lt. Blagriff, an officer who was present with them in booking at the time, of Plaintiff's request. (*Id.*) After Lowe finished distributing medications to other inmates, she, Blagriff, and Plaintiff met, and Plaintiff informed Lowe and Blagriff that he had been sexually assaulted at the courthouse by Roach. (*Id.*; Ex. J to Dyer Decl. [ECF No. 41-10].) Later that evening, at approximately 10:30 p.m., CVRJ Officers Jones and McNally transported Plaintiff to the University of Virginia Hospital for a forensic examination. (Dyer Decl. ¶¶ 27–28.) Plaintiff was discharged on February 1, 2023, at 2:40 a.m. (*Id.* ¶ 28; *see also* Ex. K to Dyer Decl. [ECF No. 41-11].)

No Defendant knew about Plaintiff's alleged reports of the officer-on-inmate assault he claims to have witnessed while employed at CVRJ until after January 31, 2023. (*See* Dyer Decl. ¶ 29; O'Donnell Decl. ¶ 18; Horrocks Decl. ¶ 7; Huffman Decl. ¶ 15; Decl. of C. Rollins ¶ 7 [ECF No. 45].)

### D. Plaintiff's Evidence

Plaintiff does not offer his own documentary evidence to refute Defendants' evidence. Instead, he argues that "[t]he inconsistencies in the evidence presented by the Defendants in favor of their motion create a genuine dispute of fact that a factfinder could resolve in [his] favor." (Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. at 1.)

### II.

Summary judgment under Rule 56 "allows a case to be resolved before and without a trial when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 352 (4th Cir. 2024) (citing Fed. R. Civ. P. 56(a)). "The court's role in ruling on such a motion is not to assess the truth of any fact alleged or to weigh facts, as would a jury in finding facts, but only to determine whether facts are disputed *and* whether the disputed facts are material." *Id.* (citations omitted).

In deciding a motion for summary judgment, "the court construes all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Tekmen v. Reliance Standard Life Ins. Co.*, 55 F.4th 951, 958 (4th Cir. 2022). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874−75 (4th Cir. 1992). And "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate if there are genuine disputes of material fact and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *id.*, but is appropriate "when the evidence is so one-sided that one party must prevail as a matter of law." *Tekmen*, 55 F.4th at 959.

### III.

Plaintiff brings his claims under 42 U.S.C. § 1983, which authorizes a civil action by a citizen who is deprived of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law. Claims under § 1983 have two essential elements: (1) "[a] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States," and (2) the plaintiff "must show that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins,* 487 U.S. 42, 48 (1988)).

### A. Plaintiff's Retaliation Claims Against All Defendants

"[T]he First Amendment prohibits public officials from retaliating against individuals for having engaged in protected speech." *Gowen v. Winfield*, 130 F.4th 162, 173 (4th Cir. 2025) (citing *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 545 (4th Cir. 2017)). "To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Jones v. Solomon*, 90 F.4th 198, 213 (4th Cir. 2024) (quoting *Martin v.*

*Duffy*, 977 F.3d 294, 299 (4th Cir. 2020)). To prove a causal connection, the plaintiff must show that "the defendants were aware of the plaintiff's engaging in a protected activity and show some degree of temporal proximity to suggest a causal connection." *Gowen*, 130 F.4th at 173 (cleaned up).

Here, no reasonable jury could find that there was a causal relationship between Plaintiff's alleged complaints about the officer-on-inmate assault he witnessed while employed at CVRJ in 2021 and Defendants allegedly allowing him to be put in harm's way during his trip to the Orange County Courthouse in 2023. Defendants have offered unrefuted evidence that none of them were aware of Plaintiff's complaints on the day he was assaulted. (*See* Dyer Decl. ¶ 29; O'Donnell Decl. ¶ 18; Horrocks Decl. ¶ 7; Huffman Decl. ¶ 15; Decl. of C. Rollins ¶ 7.) And without showing that Defendants were aware of Plaintiff's protected activity, Plaintiff cannot prove that such awareness motivated any retaliatory conduct. *See Gowen*, 130 F.4th at 173. Defendants are therefore entitled to judgment as a matter of law on Plaintiff's retaliation claims, and the court will grant them summary judgment on these claims.

### B. Plaintiff's Failure-to-Protect Claims Against O'Donnell and Horrocks

Included in the Eighth Amendment's protection against cruel and unusual punishment[3] is a requirement that corrections officials "take reasonable measures to guarantee the safety of the inmates." *Cox v. Quinn*, 828 F.3d 227, 235 (4th Cir. 2016) (quoting *Farmer v. Brennan*, 511

---

[3] Plaintiff's failure-to-protect claims are governed by the Eighth Amendment because he was a convicted prisoner serving an active sentence during the events in question, even though he was also facing additional criminal charges at the time. (*See* Ex. F to Dyer Decl. at 1 (showing Plaintiff was admitted to CVRJ on January 30, 2023 for the purposes of both serving a sentence and facing pending charges)); *see also Simmons v. Whitaker*, 106 F.4th 379, 387 (4th Cir. 2024) ("For a pre-trial detainee, the proper standard comes from the Fourteenth Amendment. . . . In contrast, claims brought by people that have been convicted and formally sentenced must meet the Eighth Amendment standard.").

U.S. 825, 832 (1994)). But a prison official's failure to prevent an injury does not automatically rise to the level of a constitutional violation. *See Farmer*, 511 U.S. at 834. To state a claim against a prison official for failure to protect, an inmate must allege facts showing that (1) "the deprivation alleged [is], objectively, sufficiently serious" and (2) the prison official had a "sufficiently culpable state of mind." *Id.* (citations omitted).

To satisfy the first element, "a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003) (citations omitted). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (citing *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992)).

To satisfy the second element, the plaintiff must plead facts showing the defendant was "deliberately indifferent" to the plaintiff's health and safety. *See Farmer*, 511 U.S. at 834 (citations omitted). Deliberate difference is "a very high standard." *Danser v. Stansberry*, 772 F.3d 340, 347 (4th Cir. 2014) (citations and internal quotation marks omitted). "A prison official demonstrates deliberate indifference if he 'knows of and disregards an excessive risk to inmate health or safety.'" *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Odom*, 349 F.3d at 770). To state an Eighth Amendment claim, the plaintiff must allege the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" *and* that he or she actually drew the inference. *Id.* "A showing of mere negligence will not suffice." *Danser*, 772 F.3d at 347 (citations omitted).

"Thus, 'an official's failure to alleviate a significant risk that he should have perceived but did not' will not give rise to a claim under the Eighth Amendment." *Id.* (quoting *Farmer*, 511 U.S. at 838). "[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown*, 612 F.3d at 723 (citations omitted).

Applying this standard, Plaintiff cannot succeed on his failure-to-protect claims because no reasonable jury could find that O'Donnell or Horrocks knew of, yet disregarded, a substantial risk to his health and safety. First, Horrocks had no personal involvement in Plaintiff's transfer to the courthouse that day and therefore no reasonable jury would find that his actions violated Plaintiff's constitutional rights. Liability under § 1983 will lie only "where it is affirmatively shown that the official charged acted personally" in the violation of the plaintiff's rights. *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (citations omitted); *see also* 28 U.S.C. § 1983 (creating liability where a person acting under color of state law "*subjects*" a citizen to the deprivation of his or rights "*or causes [the citizen] to be subjected*" to such a deprivation) (emphasis added). The unchallenged evidence presented by Defendants shows that Horrocks had no contact at all with Plaintiff the day of his assault and played no part in his trip to the courthouse. Accordingly, the unrefuted evidence establishes that Horrocks did not subject Plaintiff, or cause him to be subjected to, a deprivation of his Eighth Amendment rights. *See Wilcox*, 877 F.3d at 170.

The unrebutted evidence in the record also establishes O'Donnell's nonliability. In his sworn declaration, O'Donnell states that he did not advise the Orange County Sheriff's deputies of any need to segregate Plaintiff from other inmates because he "had no such

information to provide," "was not under any order to provide such instructions," and "was not aware of any reason or need to make any such suggestions." (O'Donnell Decl. ¶ 13.) O'Donnell further averred that, "[a]t that point in time, the plaintiff was still being housed at the Jail in a holding cell in Booking awaiting classification, and as far as [O'Donnell] was aware, [Plaintiff] had not been assigned any special housing or classification status, and he had no known enemies at the Jail." (*Id.* ¶ 11.)

In support of his failure-to-protect claim, Plaintiff offers a letter from Captain Brian Bachert, who conducted an investigation after Plaintiff's mother called and expressed concerns about Plaintiff's safety at CVRA. (*See* Ex. 1A to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J.) In the letter, Bachert writes, "Since Inmate Young's arrival to the facility he has been housed in a single cell under constant camera observation for his protection due to him being a prior Correctional Officer." (*Id.* at 2.) But this letter does not create a genuine dispute of material fact as to O'Donnell's deliberate indifference. Even if Plaintiff could show that O'Donnell *should have* perceived the risk that he would be assaulted by Roach based on Plaintiff's employment history or the nature of the charges against him (which Plaintiff has not done), this would still not be enough to establish an Eighth Amendment violation. *See Farmer*, 511 U.S. at 838; *Danser*, 772 F.3d at 347. Based on O'Donnell's sworn statements that he had no knowledge of the risk to Plaintiff from placing him in a holding cell with another inmate—a fact that Plaintiff has made no effort to rebut—no reasonable jury could find that O'Donnell was deliberately indifferent and is therefore constitutionally liable for failure to protect. Accordingly, the court will grant Defendants' motion for summary judgment as to Plaintiff's Eighth Amendment claims against O'Donnell and Horrocks.

## IV.

For the reasons discussed above, the Court will **GRANT** Defendants' motion for summary judgment (ECF No. 37) and **DISMISS** this action. The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 31st day of March, 2025.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE